FILED
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

2006 FEB 28  A 10: 02

NORTHERN DIVISION

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

| | |
|---|---|
| BRETT DOUGLAS ROBBINS,<br><br>          Plaintiff,<br><br><br>     v.<br><br><br>LOWE'S COMPANIES INC. and<br>LIBERTY LIFE ASSURANCE COMPANY<br>OF BOSTON,<br><br>          Defendants. | Case No. 1:04-CV-95 TC<br><br><br><br><br>**REPORT AND RECOMMENDATION**<br>**and ORDER** |

Before the court is Defendants' Motion for Summary Judgment. (File Entry #29.)  This case was brought pursuant to the Employee Retirement Income Security Act (hereafter referred to as "ERISA").  Specifically, Plaintiff is challenging his denial of benefits under 29 U.S.C. § 1132(a)(1)(B).  Having carefully considered the parties' memoranda and the complete record in this matter, the court recommends that Defendants' Motion for Summary Judgment be granted.

### BACKGROUND

Plaintiff, Brett Douglas Robbins, filed a claim for benefits from the Lowe's Long Term Disability Plan (hereafter referred to as "the LTD Plan"), dated November 1, 2002.  (File Entry #32, McGee Affidavit, Exhibit B, Administrative Record (hereafter

referred to as "Administrative Record"), at 206).  The LTD Plan
at issue in this action is an employee welfare benefit plan as
defined by 29 U.S.C. § 1001.  *See* File Entry #32, Exhibit 1,
Affidavit of Paula McGee In Support of Defendants' Motion for
Summary Judgment (hereafter referred to as "McGee Affidavit") at
¶ 4.  During the relevant time period, Defendant Liberty Life
Assurance Company of Boston (hereafter referred to as "Liberty
Life") was the claims administrator of the LTD Plan.  *See* McGee
Affidavit, at ¶¶ 2-4, and Exhibit A, at 1.

Liberty Life received Plaintiff's claim on November 20,
2002.  *See* Administrative Record at 206.  After requesting and
*receiving medical records concerning Plaintiff, on March 4, 2003,*
Liberty Life denied Plaintiff's claim because it determined that
the records and information received reflected that Plaintiff
could perform his own occupation at Lowe's, and therefore
Plaintiff did not meet the definition of disabled pursuant to the
document governing the LTD Plan.  *See* Administrative Record at
161-163.

On August 12, 2003, Jerome Buzzard sent a letter to Liberty
Life stating that he was assisting Plaintiff in his appeal of
Liberty Life's decision to deny benefits.  *See* Administrative
Record at 157-159.  Although this letter described why Mr.
Buzzard believed the decision should be overturned, no additional
documentation in support of the appeal was submitted with the
letter.

2

On October 8, 2003, Liberty Life wrote to Mr. Buzzard to advise him of its decision on the appeal of the denial of the claim for benefits.  *See* File Entry #32, McGee Affidavit, Exhibit C, at 117-122.  In that letter, Liberty Life stated that the appeal was being denied "because the medical and clinical evidence does not support that [Plaintiff] is disabled from his own occupation."

Acting *pro se*, Plaintiff then filed this ERISA action on July 27, 2004, and the case was assigned to United States District Judge Tena Campbell.  (File Entry #2.)  On August 26, 2004, Judge Campbell referred the case to United States Magistrate Judge Samuel Alba, pursuant to 28 U.S.C. § 636(b)(1)(B).  (File Entry #3.)

On September 16, 2005, Defendants filed a Motion for Summary Judgment.  (File Entry #29.)  Defendants' motion is supported by a memorandum and an appendix of documents, which were also filed on September 16, 2005.  (File Entries #30-32.)

On October 31, 2005, Defendants filed Defendants' Response To Plaintiff's Motion for Judgment.  (File Entry #35.)  The "Motion for Judgment" was a document Defendants had received from Plaintiff, but that the court had not received.  Defendants explained in Defendants' Response To Plaintiff's Motion for Judgment that Plaintiff's Motion for Judgment could be interpreted as a reply to Defendants' Motion for Summary Judgment.  (File Entry #35, at 1-2.)  On November 4, 2005, the

3

court sent out notice of a hearing scheduled for November 21, 2005.  (File Entry #36.)  On November 10, 2005, Plaintiff filed his Motion for Judgment with the Court.  (File Entry #37.)  Among other things, in his Motion for Judgment, Plaintiff requests that the court schedule a "walk through" of a Lowe's store.  (File Entry #37, at 1.)

On November 21, 2005, the court held its hearing.  Counsel for Defendants appeared, but Plaintiff failed to make an appearance.  (File Entry #38.)  As a result, the court issued an Order to Show Cause on November 22, 2005, directing the Plaintiff to respond within thirty days and explain why his complaint should not be dismissed for failure to appear at the hearing.  (File Entry #39.)

On December 8, 2005, Plaintiff filed a response to the court's Order to Show Cause.  (File Entry #40.)  Plaintiff explained that he had been ill and had not been able to get his mail for some time.  Plaintiff apologized for missing the hearing and requested that the court use the documents already submitted by the parties to rule on the case.

**ANALYSIS**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c);

4

*Jones v. Kodak Med. Assistance Plan*, 169 F.3d 1287, 1291 (10th
Cir. 1999). The court construes the facts and reasonable
inferences to be drawn therefrom in the light most favorable to
Plaintiff, the nonmoving party. *See* Fed. R. Civ. P. 56(c);
*Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135
(10th Cir. 1998).

Defendants argue that they are entitled to summary judgment
because Liberty Life's decision to deny Plaintiff's appeal of the
denial of the claims was not arbitrary and capricious, because
Liberty Life's interpretation the terms of the LTD Plan was
reasonable, and because Liberty Life's application of those terms
to Plaintiff's claim was supported by substantial evidence.

1. Standard of Review

"A court reviewing a challenge to a denial of employee
benefits under 29 U.S.C. § 1132(a)(1)(B) applies an 'arbitrary
and capricious' standard to a plan administrator's actions if the
plan grants the administrator discretionary authority to
determine eligibility for benefits or to construe the plan's
terms." *Charter Canyon Treatment Ctr.*, 153 F.3d at 1135; *see
also Firestone Tire & Rubber Co. V. Bruch*, 489 U.S. 101, 115
(1989). In this case, the LTD Plan contained the following
relevant language:

> Liberty shall possess the authority, in its
> sole discretion, to construe the terms of
> this policy and to determine benefit
> eligibility hereunder. Liberty's decisions
> regarding construction of the terms of this

5

                    policy and benefit eligibility shall be
                    conclusive and binding.

File Entry #32, McGee Affidavit, Exhibit A, the LTD Plan Document

at 41.  Thus, the language of the LTD Plan unambiguously set

forth that Liberty Life, the LTD Plan's claims administrator, had

full discretion to determine eligibility for benefits.  As a

result, the court must review the denial of Plaintiff's appeal of

the initial denial of his benefits under the arbitrary and

capricious standard.  *See Jones*, 169 F.3d at 1291; *Sandoval v.*

*Aetna Life and Cas. Ins. Co.*, 967 F.2d 377, 380 (10th Cir. 1992).

        Deference to a plan administrator's decision is lessened in

varying degrees if there exists a conflict of interest between

the administrator's duty to act in the interest of the plan

participant and the administrator's self interest or loyalty to

his employer.  When such a conflict of interest exists, the court

undertakes a "sliding scale" analysis, according deference in

inverse proportion to the degree of seriousness of the conflict.

*See Allison v. Unum Life Ins. Co. of America*, 381 F.3d 1015, 1021

(10th Cir. 2004); *Fought v. Unum Life Ins. Co. of America*, 379

F.3d 997, 1006; (10th Cir. 2004); *Jones*, 169 F.3d at 1291.  The

claimant bears the burden of proving both the existence of the

conflict of interest and that the conflict jeopardized the

administrator's impartiality.  *See Fought*, 379 F.3d at 1005.

        In this case, Defendants have admitted that an inherent

conflict of interest exists because Liberty Life both makes

                                  6

claims decisions and is the claims payor.  *See* File Entry #30, at
7.  "When the plan administrator operates under . . . an inherent
conflict of interest, . . . the plan administrator bears the
burden of proving the reasonableness of its decision pursuant to
this court's traditional arbitrary and capricious standard."
*Fought*, 379 F.3d at 1006 (10th Cir. 2004).  "In such instances,
the plan administrator must demonstrate that its interpretation
of the terms of the plan is reasonable and that its application
of those terms is supported by substantial evidence."  *Id.*

Plaintiff has not asserted that a conflict of interest
exists in this case.  Therefore, the court concludes that it must
review this case under the arbitrary and capricious standard
while considering Liberty Life's standard conflict of interest as
one factor in determining whether Liberty Life's denial of
disability benefits to Plaintiff was arbitrary and capricious.
*See Firestone*, 489 U.S. at 115; *Charter Canyon Treatment Ctr.*,
153 F.3d at 1135; *Fought*, 379 F.3d at 1005.  Under such a
standard, the court must give great deference to Liberty Life's
decision to reject Plaintiff's appeal below.

### 2. Record Before Court

Plaintiff has submitted numerous documents to the court to
consider in reviewing his case.  *See* File Entry #13 "Exhibits
Substantiating Case," and File Entry #28 "Documents Supporting My
Case."  Plaintiff has also requested that the court conduct a
"walk through" of a Lowe's store before ruling on Defendants'

7

Motion for Summary Judgment.  However, in submitting these documents and in making his request, Plaintiff fails to recognize the well established rule limiting the record before the court to the evidence that was before Liberty Life, the claims administrator, at the time Liberty Life made its decision.  *See Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 824 (10th Cir. 1996); *see also Sandoval*, 967 F.2d at 381 ("In effect, a curtain falls when the fiduciary completes its review, and for purposes of determining if substantial evidence supported the decision, the district court must evaluate the record as it was at the time of the decision."  (Citations omitted.)).

Defendants assert that Exhibit "B" to the McGee Affidavit constitutes the entire Administrative Record that was before Liberty Life at the time it made its decision on Plaintiff's appeal, and therefore, it constitutes all the documents reviewed by Liberty Life in its consideration of the Plaintiff's claims for benefits from the LTD Plan.  (File Entry #30, at 4.)  That assertion is supported by the McGee Affidavit, *see* McGee Affidavit, at ¶3, and Plaintiff has not contested that assertion. As a result, the only evidence the court may consider is that offered by Defendants as Exhibit "B" to the McGee Affidavit, which undisputedly constitutes the Administrative Record.

Therefore, in reviewing Liberty Life's decision to deny Plaintiff's claim for benefits under the arbitrary and capricious standard, the court is limited to the Administrative Record

8

submitted by Defendants, which constitutes the evidence that was before Liberty Life, the claims administrator, at the time Liberty Life made its contested decision.

### 3.   Liberty Life's Decision

A plan administrator's decision is not arbitrary and capricious "if it was reasonable, given the terms of the plan, and made in good faith." *Jones*, 169 F.3d at 1292 (citing *Siemon v. AT&T Corp.*, 117 F.3d 1173, 1177 (10th Cir. 1997)). The Tenth Circuit explained in *Kimber v. Thiokol Corp.*,

> When reviewing under the arbitrary and capricious standard, "[t]he Administrator['s] decision need not be the only logical one nor even the best one. It need only be *sufficiently supported by facts within* [his] knowledge to counter a claim that it was arbitrary or capricious." The decision will be upheld unless it is "not grounded on *any* reasonable basis." The reviewing court "need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness – even if on the low end."

196 F.3d 1092, 1098 (10th Cir. 1999) (citations omitted). Thus, Plaintiff's case turns on whether Liberty Life's decision to deny Plaintiff's claim was "sufficiently supported by facts." As explained above, because Liberty Life has admitted that it had an inherent conflict of interest in this case, Liberty Life has the burden to show that its interpretation of the terms of the LTD Plan is reasonable and that its application of those terms is supported by substantial evidence.

9

Plaintiff has not argued that Liberty Life's interpretation of the LTD Plan's terms was not reasonable. Instead, the focus in this case is on whether the evidence supports the denial of Plaintiff's disability benefits. As a result, the court concludes, from its review of the record, that Liberty Life's interpretation of the terms of the LTD Plan was reasonable. The court next examines the area of dispute, which is whether substantial evidence supports Liberty Life's decision.

In examining whether Liberty Life's application of the terms of the LTD Plan is supported by substantial evidence, the court reiterates that it has carefully reviewed the Administrative Record, as well as Plaintiff's and Defendants' pleadings. From that review, the court concludes that Defendants have shown that the Administrative Record contains substantial evidence supporting Liberty Life's decision to deny Plaintiff's appeal of the initial denial of disability benefits.[1] Specifically, Liberty Life's decision is supported by documents from: (1) Dr. Salib, including evidence suggesting that forged documents were

---

[1]The LTD Plan provides that "'[d]isability' or '[d]isabled' means that during the Elimination Period and the next 24 months of Disability, the Covered Person, as a result of Injury or Sickness, in unable to perform the Material and Substantial Duties of his Own Occupation . . . ." McGee Affidavit, Exhibit A, the LTD Plan Document at 7. The LTD Plan document also provides that "'Material and Substantial Duties,' with respect to Long Term Disability, means responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified." McGee Affidavit, Exhibit A, LTD Plan Document at 9.

10

submitted to Defendants to bolster Plaintiff's application for benefits; (2) Dr. Greenhood's report; (3) Defendant Lowe's occupational analysis in conjunction with Vargus Vocational Consulting's analysis; and (4) Jerome Buzzard's letters.

First, Plaintiff identified Hani Salib, M.D., as his doctor on his Disability Claim Form. *See* Administrative Record at 206. As a result, Liberty Life faxed a request to Dr. Salib for Plaintiff's medical records. *See* Administrative Record at 203-204. Dr. Salib sent records of office visits from April 9, 2002, until July 31, 2002, along with laboratory testing through December 2002. *See* Administrative Record at 178-199. The July 31, 2002 office note stated that Plaintiff was having stomach pain, with some vomiting and diarrhea, both of which were noted as "resolved." *See* Administrative Record at 178. Plaintiff had gained three pounds since the weight noted in his first Patient Clinical Notes dated April 9, 2002. *See* Administrative Record at 178-180. In addition, the December 26, 2002 Serial Monitoring Report reflected that Plaintiff's viral load had been stable and had slightly declined between September 2002 and December 2002. *See* Administrative Record at 181.

On January 15, 2003, Liberty Life wrote Plaintiff, stating that more documentation would be required because the documentation received from Dr. Salib did not support a finding of disability. *See* Administrative Record at 177. On January 28, 2003, Dr. Salib sent an additional three pages of medical records

11

to Liberty Life.  *See* Administrative Record at 173-176.  The
note, dated January 21, 2003, stated that Plaintiff "had usual
HIV-related symptoms" of fatigue, dyspnea, and intermittent
depression.  *See* Administrative Record at 174.  The January 21
note also stated that Plaintiff had "wasting syndrome," even
though his weight on that date was 160 pounds, only one pound
less than it had been nine months earlier, on April 9, 2002.  *See*
Administrative Record at 174, 175, 180.  Plaintiff's reported
purpose for this visit on January 21, 2003, was to check his
blood pressure, but Dr. Salib's treatment plan was "reassurance -
no need for BP treatment now."  *See* Administrative Record at 174-
175.

Then, on January 27, 2003, Liberty Life received a letter
that appeared to be from Dr. Salib, dated January 22, 2003, which
purported to support Plaintiff's claim for disability benefits.
*See* Administrative Record at 171.[2]  However, approximately eight
months later, on September 18, 2003, during the course of Liberty
Life's investigation of this matter, Gary P. Greenhood, a
physician Liberty Life had retained to review Plaintiff's medical

---

[2]The January 22, 2003 letter includes statements such as,
"It is in [Plaintiff's] best interest that he keeps from working
. . ." and "I had requested [Plaintiff] to stop working due to
the side effects of [his] medications . . . ."  Administrative
Record at 171.  The November 7, 2002 Attending Physician's
Statement includes statements such as, "No expected improvement
since this is a terminal illness," "Progressive weakness, fatigue
. . .," and "Unexpected Recovery - Terminal Illness."
Administrative Record at 84.

12

records, telephoned Dr. Salib to discuss Dr. Salib's documents with him.  Dr. Salib told Dr. Greenhood that he had not authored or signed either the January 22, 2003 letter or the November 7, 2002 Attending Physician's Statement.[3]  See Administrative Record at 126.  Dr. Salib also stated that he had not seen Plaintiff since the January 21, 2003 visit, and Dr. Salib asked that the documents be faxed to him, which Liberty Life did on September 30, 2003.  See Administrative Record at 90-93, 126.  On October 27, 2003, after receiving the faxed documents, Dr. Salib wrote to Liberty Life, confirming that he neither authored nor signed both the November 7, 2002 Attending Physician's Statement and the January 22, 2003 letter attributed to him.  See Administrative Record at 89.  Dr. Salib further explained that Plaintiff had last been seen in his office on January 21, 2003, and that he had not returned for a follow-up visit.  See Administrative Record at 89.

Second, Liberty Life's decision is also supported by Dr. Greenhood's September 30, 2003 report.  See Administrative Record at 98-101.  That was the document that reported that Dr. Salib told Dr. Greenhood in a teleconference that he had not authored the January 22, 2003 letter.  See Administrative Record at 101. Dr. Greenhood's September 30, 2003 report also stated that while Dr. Salib's diagnosis of HIV positivity was correct, there was no

_____

[3]It is unclear to the court when Liberty Life first received the November 7, 2002 Attending Physician's Statement.

13

documentation of at least a 10% involuntary loss of weight to
support the diagnosis of AIDS-wasting syndrome.  *See*
Administrative Record at 100.  Dr. Greenhood further reported,
"in view of well-controlled HIV replication; no wasting,
dementia, opportunistic infections, malignancies, or documented
medication side effects, no work-related restrictions or
limitations are evident as of 06/01/02."  Administrative Record
at 100.  Dr. Greenhood concluded that  "[t]he medical information
in the file does not support an inability-to-work from 6/1/02 to
8/30/02 (or at any other time for that matter)."  Administrative
Record at 101.  Dr. Greenhood explained that he was "not familiar
with any data that supports the contention that a return-to-work
will cause a patient that is infected with HIV to have recurrence
of HIV replication or a fall in the CD4 cell count."
Administrative Record at 101.  Dr. Greenhood further explained
that Plaintiff's HIV replication had been "well controlled" due
to the Combivir and Sustiva medical therapy, and "not due to a
lack of work."  *See* Administrative Record at 101.

     Third, Liberty Life's decision to deny benefits is also
supported by the February 28, 2003 Vargus Vocational Consulting
analysis.  *See* Administrative Record at 165-170.  Liberty Life
requested an occupational analysis of Plaintiff's position as
Sales Specialist.  Defendant Lowe's supplied the occupational
analysis and described Plaintiff's duties as requiring occasional
bending at the waist, frequent twisting the neck and waist,

                              14

occasional climbing, crouching, squatting or kneeling, lifting up
to 40 pounds unassisted, standing for one hour continuously, and
walking up to 100 feet continuously. *See* Administrative Record
at 169. In its February 28, 2003 analysis, Vargus Vocational
Consulting classified Plaintiff's job as Light in strength
requirements. *See* Administrative Record at 165.

Fourth, Jerome Buzzard's correspondence with Liberty Life
provides no additional evidence supporting Plaintiff's
application for benefits. *See* Administrative Record at 157-159.
After Liberty Life initially denied Plaintiff's claim for
benefits on March 4, 2003, Jerome Buzzard sent a letter dated
August 12, 2003, stating that he was appealing the denied claim
on Plaintiff's behalf. *See* Administrative Record at 157-159.
The vast majority of that letter was based on statements from the
subsequently discredited January 22, 2003 letter Dr. Salib denied
authoring or signing. *See* Administrative Record at 157-159.
Furthermore, no additional medical records were ever sent by Mr.
Buzzard to support Plaintiff's appeal. Also, neither Mr. Buzzard
nor Plaintiff ever sent information identifying another medical
provider.

As has already been stated, the court has carefully reviewed
the Administrative Record. Within the Administrative Record, the
court has not found any objective evidence (that has not been
discredited by its supposed author) pertaining to any side
effects of medications, fatigue, opportunistic infections,

15

malignancies, or wasting syndrome that could support a finding of disability with a positive HIV diagnosis.  All that is present in the Administrative Record is an HIV-positive diagnosis, which laboratory testing appears to indicate is stable and controlled by medication.  Although some evidence exists in the Administrative Record that may support some of Plaintiff's arguments, such as the more detailed job descriptions of a Lowe's Sales Specialist, *see* Administrative Record at 167-168, the substantial evidence set forth above supporting Liberty Life's decision very much overcomes any such contradictory evidence.  As a result, the court concludes that Liberty Life's decision that Plaintiff was not "disabled," as defined by the LTD Plan Document, and was capable of performing his own occupation, was supported by substantial evidence and was not arbitrary and capricious.

**ORDER**

In his "Motion for Judgment" (File Entry #37), Plaintiff requested that the court conduct an unannounced "walk through" of a Lowe's store.  Plaintiff sought to have the court conduct the "walk through" the day before the hearing on Defendants' summary judgment motion.  Because Plaintiff did not appear for the hearing, it appears that Plaintiff abandoned his request for the "walk through."  In any case, as discussed above, a "walk through" is inappropriate in considering this motion for summary judgment, where the court is limited to the Administrative

16

Record.  *See Chambers*, 100 F.3d at 824; *Sandoval*, 967 F.2d at
381.  As a result, **IT IS HEREBY ORDERED** that Plaintiff's motion
for the court to conduct a "walk through" of a Lowe's store is
**DENIED**.

**RECOMMENDATION**

Furthermore, based on the above analysis, the Court
concludes that no genuine issue of material fact exists in this
case, in which the court's review is limited to the
administrative record.  The Court further concludes that Liberty
Life's decision to deny Plaintiff's appeal of his denial of
disability benefits was not arbitrary and capricious, that
Liberty Life has shown that its interpretation of the documents
that govern the LTD Plan was reasonable, and that Liberty Life
has shown that its application of those terms is supported by
substantial evidence.  As a result, **IT IS RECOMMENDED** that
Defendants' Motion for Summary Judgment (File Entry #29) be
**GRANTED**.

Copies of the foregoing report and recommendation are being
mailed to the parties who are hereby notified of their right to
object to the same.  The parties are further notified that they
must file any objections to the report and recommendation, with
the clerk of the district court, pursuant to 28 U.S.C. § 636(b),

within ten (10) days after receiving it.  Failure to file
objections may constitute a waiver of those objections on
subsequent appellate review.

DATED this __28th__ day of February, 2006.

BY THE COURT:

SAMUEL ALBA
United States Chief Magistrate Judge

18